UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-12482-RGS

THERESHA BRINIG

v.

ILLINOIS CENTRAL SCHOOL BUS, LLC
d/b/a NORTH AMERICA CENTRAL SCHOOL BUS

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

February 27, 2019

STEARNS, D.J.

This case began when, in a regrettable lapse of holiday judgment, plaintiff Theresha Brinig, a bus driver for the Waltham public schools, distributed the business card of a Rent-a-Santa to the pupils on her bus. Parents predictably complained to the School District, which in turn complained to Brinig's employer, defendant North American Central School Bus, LLC (NACSB), demanding that Brinig be banned from Waltham school busses. NACSB obliged. Claiming discrimination, Brinig brought this lawsuit against NACSB.

BACKGROUND

NACSB's Transportation Service Agreement with the Waltham School District contained a provision directly relevant to Brinig's case. Under the terms of the Service Agreement, the District could "accept or reject any or all [NACSB] employees at any time within the contract period, if it is deemed by the City to be in the best interest of the City of Waltham to do so." Dkt #38 – Def.'s Ex. C (Service Agreement) at Art. V § (C).

NACSB hired Brinig as a part-time school bus driver in the fall of 2011. Brinig was a member of the Waltham Drivers' Association (Union) and her employment was subject to a Collective Bargaining Agreement (CBA). Def.'s Ex. J (CBA). Article XIV of the CBA, titled Termination of Operations, provides: "It is recognized and agreed by the parties that the Company is employing the employees covered by this agreement so as to fulfill its obligations under its contract with the School Committee of the City of Waltham. This Agreement is made subject to the terms and conditions of the City of Waltham contract." *Id.* at 10. In August of 2012, Brinig was given a copy of NACSB's employee handbook which explained the company's strict non-solicitation policy: "An employee may not solicit for any cause or organization during his or her working time or the working time of the employee being solicited. Likewise, an employee may not distribute literature on Company property during working times or at any time in

working areas." *Id.* – Ex. E (NACSB Employee Handbook) at 11; Ex. D (Brinig Dep.) at 28.

On November 14, 2014, without notice to her employer or the District, Brinig gave out photocopies of a business card with telephone numbers of a Santa Claus impersonator to elementary and high school students on her bus. Brinig testified that she had met the aspiring Santa "a couple times at Burger King in Waltham."[1] *Id.* at 30-31, 40; *see also* Def.'s Ex. F (card). On November 15, 2014, Dr. Susan Nicholson, Superintendent of the Waltham Schools, notified Leanne Wilcinski, Waltham's School Business Administrator, that parents had complained about Brinig's solicitation of their children on the Santa's behalf. On November 17, 2014, Dr. Nicholson, Wilcinski, and Ann Frassica, the Waltham Public Schools Safety Officer, determined that Brinig ws unsuitable as a Waltham school bus driver "because she [had] demonstrated such poor judgment and potentially endangered the students." Def.'s Ex. G (Wilcinski Aff.) ¶ 7. On November 17, 2014, Wilcinski wrote to Daniel Allder, the NACSB Contract Manager, and David Petersen, the NACSB Regional Operations Manager, describing the "incident" and requesting that Brinig "no longer be used as a bus driver for

---

[1] Brinig testifies that she had handed out contact information regarding another Santa to Waltham students in prior years without any complaints. Brinig Dep. at 37-39.

the City of Waltham." *Id.* ¶ 8; Def.'s Ex. L (Nov. 17, 2014 Letter).  NACSB immediately terminated Brinig stating that it had no other similar job for her "in or even near Massachusetts."[2]  Def.'s Ex. B (Petersen Dep.) at 34, 41-42.  Brinig testified that she asked NACSB if she could work instead as a local dispatcher, but received no response.[3]

Brinig contends that the Union mailed a grievance letter on November 21, 2014, to "the Belmont address where our buses are housed." Pl.'s Ex. E; Brinig Dep. at 63.  NACSB, however, contends that "[p]er the company's records, no grievance was filed and [Brinig] did not pursue the grievance

---

[2] Petersen testified that Gary, Indiana was the nearest school district for which NACSB provided transportation services. Def.'s Ex. B (Petersen Dep.) at 65-66.  While Brinig stated in her deposition that she "would have entertained leaving the state" to keep her employment with NACSB, there is no evidence that she ever communicated her willingness to relocate to her employer.  *See* Pl.'s Ex. J at 48.

[3] In her deposition, Brinig stated that another NACSB bus driver, John Mullane, who "took over for plaintiff," was later terminated after becoming involved in an accident, but was offered reinstatement to a dispatcher position, which he declined.  NACSB counters (consistent with Brinig's own testimony), that it did not have a permanent dispatcher's position, but rather filled the position temporarily when needed with available drivers.  See Def.'s Statement of Facts (SOF) #19; Petersen Aff. ¶ 10; *see also* Brinig Dep. at 20-21.  NACSB hired a dedicated dispatcher only in May of 2016 at the District's insistence.  NACSB also offers sworn testimony and documentary evidence that Mullane was terminated by NACSB on January 16, 2015, "for causing an accident while driving a NACSB vehicle . . . and was never offered a dispatcher or any other position."  Petersen Aff. ¶ 14.  Brinig provides no evidence to the contrary.

4

procedure." Pl.'s Ex. G (Letter to MCAD) at 2; *see also* Pl.'s Ex. C, Int. 11. Brinig maintains that when NACSB produced her personnel file it contained the grievance request, which NACSB "ignored . . . , even though other male employees were allowed to pursue grievances." Second Am. Compl. ¶ 9.

On November 7, 2017, Brinig filed a four-count Complaint against NACSB in the Middlesex Superior Court asserting Title VII and state anti-discrimination claims, as well as state common-law claims for retaliation and wrongful termination. In its essentials, the Complaint alleges that NACSB treated Brinig and other female employees differently than their male counterparts when dealing with fireable offenses. Brinig claims that male employees were consistently allowed to grieve terminations, which often led to their reinstatement, an opportunity denied to female employees.[4]

NACSB timely removed the case to the federal district court. Prior to NACSB's filing of a responsive pleading, Brinig filed an Amended Complaint deleting the retaliation claim. NACSB answered both discrimination claims, but moved to dismiss Count III, the common-law wrongful termination claim. Brinig then filed a Second Amended Complaint revising Count III to assert a violation by NACSB of the covenant of good faith and fair dealing for

---

[4] Brinig maintains that NACSB failed to comply with Article 9 of the CBA, which requires that an employee "may only be . . . discharged for just cause and the employer must first give at least two written notices." *Id.* ¶ 10.

5

its having terminated her "without affording her the procedural protections of the CBA because of her gender." The court subsequently denied NACSB's motion to dismiss the original Count III as moot. Now before the court is NACSB's motion for summary judgment.

## STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphases in original). A material fact is one which has the "potential to affect the outcome of the suit under applicable law." *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993). In assessing the genuineness of a material dispute, the facts are to be "viewed in the light most flattering to the party opposing the motion." *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995).

## DISCUSSION

Title VII prohibits an employer from discriminating "against any individual with respect to [her] compensation, terms, conditions, or

privileges of employment, because of . . . sex." 42 U.S.C. § 2000e-2(a)(1). Massachusetts similarly prohibits employers from engaging in discrimination based on gender. Mass. Gen. Laws ch. 151B, § 4(1). Sex discrimination, under both federal and state law, can be proven either by direct evidence or through the three-stage burden shifting paradigm set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 19 (1st Cir. 1999); *Abramian v. President & Fellows of Harvard Coll.*, 432 Mass. 107, 116 (2000). At the first stage, a plaintiff must establish a prima facie case of discrimination by showing that: (1) she is a member of a protected class; (2) she was performing at an adequate level; and (3) she suffered an adverse employment action.[2] If the plaintiff succeeds in establishing her prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. The onus on the employer is not a heavy one. "The employer's reasons need not be wise, so long as they are not discriminatory and they are not pretext." *Tardanico v. Aetna Life & Cas. Co.*, 41 Mass. App. Ct. 443, 448 (1996). If the employer

---

[5] Comparative evidence regarding the treatment of similarly situated persons in a disparate treatment case is considered at the third step of burden-shifting. It is not an element of a plaintiff's prima facie case. *Conward*, 171 F.3d at 19.

meets its burden, the plaintiff must come forward with evidence demonstrating that the employer's proffered reason is a pretext and that the adverse action was motivated by a discriminatory animus. "Despite these shifting burdens of production, the plaintiff throughout retains the burden of persuasion." *Conward*, 171 F.3d at 19.

Assuming, without deciding, that Brinig has laid out a prima facie case, NACSB has articulated a nondiscriminatory reason for Brinig's firing, that she "was terminated because Waltham rejected [her] as a driver and there was nowhere else to transfer [her] as NACSB did not provide school bus services to any other city or company in or even near Massachusetts." Petersen Dep. at 34, 41-42. The CBA clearly states that its employee protections are subordinate to the discretionary right guaranteed to the City of Waltham by the Service Agreement to reject any NACSB employee whose tenure is deemed not in the "best interest" of the City.

Brinig nonetheless claims that, in failing to act on her grievance petition, NACSB treated her differently than her male colleagues. "In a disparate treatment case, the plaintiff has the burden of showing that she was treated differently from 'persons similarly situated' '*in all relevant aspects.*'" *Smith v. Stratus Computer, Inc.,* 40 F.3d 11, 17 (1st Cir. 1994) (emphasis in original). The test is whether a "prudent person, looking objectively at the

8

incidents, would think them roughly equivalent and the protagonists similarly situated. . . . Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples." *Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 13, 19 (1st Cir. 1989) (*rev'd on other grounds by Educadores Puertorriquenos en Accion v. Hernandez,* 367 F.3d 61 (1st Cir. 2004)). The proponent must show that the individuals with whom she seeks to be compared have "engaged in the same conduct without such differentiating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1992).

To support her disparate treatment claim, Brinig cites NACSB's handling of male employees "Tony Carvallo, Nelson Ortiz and another driver (Maxime)" and "Jack Mullane" as examples of similarly situated male employees who committed fireable offenses, were suspended, and then permitted to return to work after NACSB heard their grievances. Pl.'s SOF at 17. However, Brinig's own evidence contradicts her attempted comparison. According to Brinig, Carvallo and Ortiz were "illegally terminated" – Carvallo for a Criminal Offender Record Information (CORI) check that wrongfully relied on juvenile records, and Ortiz for a mistaken CORI identification. As the Union's designated representative, it was Brinig

9

herself who handled Carvallo's and Ortiz's grievances, and successfully advocated with NACSB for the restoration of their jobs. The "Maxine" comparator is even less relevant. According to Brinig," Maxine" became "extremely belligerent, calling her all kinds of derogatory names" when she asked him to move his bus. Brinig Dep. at 50. As a result, NACSB suspended "Maxine" for "two or three days" and directed him to apologize to Brinig. As Brinig admits, the City of Waltham had no role in reviewing the infractions involving the male comparators she cites and thus had no occasion to demand a "best interest" rejection of their continued employment. *Id.* at 56-57. Accordingly, these employees are not "similarly situated in all respects" to Brinig (in whose case the City intervened). Finally, the previously mentioned John Mullane, who was terminated after causing an accident and then leaving the scene, was never reinstated, nor according to NACSB's sworn testimony, offered another position with the company. Given the absence of any admissible comparator evidence, Brinig's federal and state discrimination claims fail.

In Count III, Brinig alleges a wrongful termination claim against NACSB for "failing to follow the procedural steps in the CBA in that [NACSB] did not afford [Brinig] with an opportunity after her request to grieve her discharge, and [NACSB] did not provide [Brinig] with the written warnings

prior to discharge." Second Am. Compl. ¶ 35. Brinig also maintains that NACSB "violated its covenant of good faith and fair dealing by terminating her without affording her the procedural protections of the CBA." *Id.* ¶ 36.

These state-law claims for all practical purposes are preempted by § 301 of the Labor Management Relations Act. "[A]s a general rule, neither state nor federal courts have jurisdiction over suits directly involving 'activity (which) is arguably subject to § 7 or § 8 of the [National Labor Relations] Act.'" *Vaca v. Sipes*, 386 U.S. 171, 179 (1967), quoting *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245 (1959). "It is well-established that § 301 completely preempts a state law claim if the resolution of the claim necessitates analysis of, or substantially depends on the meaning of, a collective bargaining agreement." *Quesnel v. Prudential Ins. Co.*, 66 F.3d 8, 10 (1st Cir. 1995); *see also Martin v. Shaw's Supermarkets, Inc.*, 105 F.3d 40, 42 (1st Cir. 1997) (same). A state-law claim "depends" on a CBA if it alleges conduct that constitutes a breach of a duty arising under a CBA. *Flibotte v. Pennsylvania Truck Lines, Inc.,* 131 F.3d 21, 26 (1st Cir. 1997). The allegations that NACSB failed to follow the procedural of the CBA by

giving warnings and processing her grievance before terminating her are squarely preempted by § 301.[5]

However, it is also true that § 301 preemption is not without limitation. *Fant v. New England Power Serv. Co.*, 239 F.3d 8, 15 (1st Cir. 2001). Section 301, does not, for example, preempt nonnegotiable rights conferred on individual employees as a matter of state law. *See Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994). Brinig's amended Count III is a regurgitation of the gender discrimination claims set out in Counts I and II – that NACSB treated her differently than several of its male drivers. While the statutory claim is not preempted by § 301, it fails for the same reasons as do Counts I and II.

## ORDER

For the foregoing reasons, defendants' motion for summary judgment is <u>ALLOWED</u>. The Clerk will enter judgment for Illinois Central School Bus LLC d/b/a North America Central School Bus on all claims and close the case.

SO ORDERED.

/s/ Richard G. Stearns_____
UNITED STATES DISTRICT JUDGE

---

[6] It should be noted that there is nothing in the CBA that requires NACSB to process employee grievances – rather the burden lies with the Union to initiate the process ("[T]he grievance committee shall bring the matter to the attention of the owner of the Company in an attempt to reach a satisfactory solution.").